*FILED*

*JAN 14 PM 3:08*

EDL

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  JAMES FARRIS,                        CV 08 0231

          Plaintiff,
13
    vs.
14                                        COMPLAINT FOR ASBESTOS
                                          PERSONAL INJURY/ PRODUCTS
15  WARREN PUMPS, LLC,                    LIABILITY;

          Defendant.
16                                        DEMAND FOR JURY TRIAL

17

18                            I.

19                          PARTIES

20       1.    Plaintiff in this action, JAMES FARRIS has sustained asbestos-related lung injuries

21  as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

22       2.    Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

23  fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

24       3.    The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**,

25  attached to Plaintiff's complaint and incorporated by reference herein.

26       4.    All of Plaintiff's claims arise out of repeated exposure to asbestos-containing

27  products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or

28  maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\102745\Fed\Cmp FED (PI solo).wpd
                                    1
                              COMPLAINT

1  toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative,
2  progressive, incurable lung diseases.

3      5.    Plaintiff claims damages for an asbestos-related disease arising from a series of
4  occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing
5  products, when handled in the manner in which they were intended, released harmful asbestos
6  fibers which when inhaled by Plaintiff, caused serious lung disease.

7      6.    As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

8      7.    Plaintiff is informed and believes, and thereon alleges that at all times herein
9  mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole
10 proprietorships and/or other business entities organized and existing under and by virtue of the
11 laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
12 said defendants, and each of them, were and are authorized to do and are doing business in the
13 State of California, and that said defendants have regularly conducted business in the County of
14 San Francisco, State of California.

15                                         II.

16              **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

17      8.    Jurisdiction: Plaintiff JAMES FARRIS is a citizen of the State of California.
18 Defendant WARREN PUMPS, LLC  is a corporation incorporated under the laws of , and having
19 its principal places of business in New Jersey.

20          This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action
21 between citizens of different states in which the matter in controversy exceeds, exclusive of costs
22 and interest, seventy-five thousand dollars.

23      9.    Venue / Intradistrict Assignment. Venue is proper in the Northern District of
24 California and assignment to the San Francisco Division of said district is proper as a substantial
25 part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred
26 within the County of San Francisco, California, and Defendants are subject to personal
27 jurisdiction in this district at the time the action is commenced.

28                                         III.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFF JAMES FARRIS COMPLAINS OF DEFENDANTS WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign,  predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such

3

1 | ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or
2 | a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused
3 | the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such
4 | defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY;
5 | and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE
6 | ENTITY:

7 | DEFENDANT                              ALTERNATE ENTITY

8 | WARREN PUMPS, LLC               WARREN PUMPS, INC.
                                      QUIMBY PUMP COMPANY
9 |                                         WARREN STEAM PUMPS COMPANY

10 |      11.   At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and
11 | each of them, were and are engaged in the business of researching, manufacturing, fabricating,
12 | designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
13 | supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,
14 | promoting, representing, servicing, installing, contracting for installation, repairing, marketing,
15 | warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,
16 | or otherwise directing and/or facilitating the use of, or advertising a certain product, namely
17 | asbestos and other products containing asbestos.

18 |      12.  At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each
19 | of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated,
20 | designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of
21 | the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied,
22 | sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed,
23 | represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded,
24 | manufactured for others, packaged and advertised, a certain product, namely asbestos, and other
25 | products containing asbestos, in that said products caused personal injuries to users, consumers,
26 | workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called
27 | "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby
28 | rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

K:\Injured\102745\Fed\Cmp FED (PI solo).wpd                 4

1       13. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

2 exercise due care in the pursuance of the activities mentioned above and defendants, and each of

3 them, breached said duty of due care.

4       14. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

5 have known, and intended that the aforementioned asbestos and products containing asbestos

6 and related products and equipment, would be transported by truck, rail, ship, and other common

7 carriers, that in the shipping process the products would break, crumble, or be otherwise

8 damaged; and/or that such products would be used for insulation, construction, plastering,

9 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

10 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

11 breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

12 release of airborne asbestos fibers, and that through such foreseeable use and/or handling

13 "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to

14 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

15 persons working in proximity to said products, directly or through reentrainment.

16       15. Plaintiff have used, handled, or been otherwise exposed to asbestos and asbestos-

17 containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

18 exposure to asbestos and asbestos-containing products is on current information as set forth at

19 various locations and circumstances in **Exhibit** A, attached to plaintiff's complaint and

20 incorporated by reference herein.

21       16. As a direct and proximate result of the acts, omissions, and conduct of the defendants,

22 their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos

23 and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to

24 the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by

25 reference herein.

26       17. Plaintiff is informed and believes, and thereon alleges, that progressive lung

27 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos

28 fibers without perceptible trauma and that said injury, damage, loss, or harm results from

1  exposure to asbestos and asbestos-containing products over a period of time.

2        18. Plaintiff suffers from a condition related to exposure to asbestos and
3  asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or
4  asbestos-containing products presented risk of injury and/or disease.

5        19. As a direct and proximate result of the aforesaid conduct of defendants, their
6  ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,
7  permanent injuries and/or future increased risk of injuries to their persons, body and health,
8  including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and
9  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to
10  Plaintiff's general damage.

11       20. As a direct and proximate result of the aforesaid conduct of the defendants, their
12  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur
13  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays
14  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this
15  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost
16  thereof is ascertained.

17       21. As a further direct and proximate result of the said conduct of the defendants, their
18  "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and
19  extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to
20  conform to proof at the time of trial.

21       22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
22  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
23  had full knowledge of, or should have known of, each of the acts set forth herein.

24       23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent,
25  oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each
26  defendant's officers, directors and managing agents participated in, authorized, expressly and
27  impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their
28  ALTERNATE ENTITIES as set forth herein.

1     24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and
2  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard
3  and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of example
4  and by way of punishing said defendants, seeks punitive damages according to proof.

5     WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and
6  each of them, as hereinafter set forth.

7                              SECOND CAUSE OF ACTION

8                                (Products Liability)

9       AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
10  ACTION FOR PRODUCTS LIABILITY, PLAINTIFF JAMES FARRIS COMPLAINS OF
11  DEFENDANTS  WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH
12  OF THEM, AS FOLLOWS:

13     25. Plaintiff incorporates herein by reference, as though fully set forth herein, the
14  allegations contained in each paragraph of the First Cause of Action herein.

15     26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended
16  that the above-referenced asbestos and asbestos-containing products would be used by the
17  purchaser or user without inspection for defects therein or in any of their component parts and
18  without knowledge of the hazards involved in such use.

19     27. Said asbestos and asbestos-containing products were defective and unsafe for their
20  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The
21  defect existed in the said products at the time they left the possession of defendants, their
22  "alternate entities," and each of them. Said products did, in fact, cause personal injuries,
23  including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff
24  herein, while being used in a reasonably foreseeable manner, thereby rendering the same
25  defective, unsafe and dangerous for use.

26     28.  "Exposed persons" did not know of the substantial danger of using said products.
27  Said dangers were not readily recognizable by "exposed persons". Said defendants, their
28  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

1  which Plaintiff and others similarly situated were exposed.

2  29.  In researching, manufacturing, fabricating, designing, modifying, testing or failing
3  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
4  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
5  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
6  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
7  did so with conscious disregard for the safety of "exposed persons" who came in contact with
8  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
9  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
10  death resulting from exposure to asbestos or asbestos-containing products, including, but not
11  limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
12  from scientific studies performed by, at the request of, or with the assistance of, said defendants,
13  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
14  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

15  30.  On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES
16  and each of them, were aware that members of the general public and other "exposed persons",
17  who would come in contact with their asbestos and asbestos-containing products, had no
18  knowledge or information indicating that asbestos or asbestos-containing products could cause
19  injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
20  members of the general public and other "exposed persons", who came in contact with asbestos
21  and asbestos-containing products, would assume, and in fact did assume, that exposure to
22  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
23  hazardous to health and human life.

24  31.  With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of
25  them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease,
26  buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,
27  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-
28  containing products without attempting to protect "exposed persons" from or warn "exposed

K:\Injured\102745\Fed\Cmp FED (PI solo).wpd

8

1 | persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-
2 | containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed
3 | persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-
4 | containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally
5 | failed to reveal their knowledge of said risk, and consciously and actively concealed and
6 | suppressed said knowledge from "exposed persons" and members of the general public, thus
7 | impliedly representing to "exposed persons" and members of the general public that asbestos and
8 | asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
9 | ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
10 | representations with the knowledge of the falsity of said implied representations.

11 |     32.   The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
12 | and each of them, was motivated by the financial interest of said defendants, their ALTERNATE
13 | ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
14 | manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
15 | sale, inspection, installation, contracting for installation, repair, marketing, warranting,
16 | rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-
17 | containing products. In pursuance of said financial motivation, said defendants, their
18 | ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
19 | persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
20 | containing products to cause injury to "exposed persons" and induced persons to work with and
21 | be exposed thereto, including Plaintiff.

22 |     33.   Plaintiff alleges that the aforementioned defendants, their ALTERNATE
23 | ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
24 | products to be safe for their intended use but that their asbestos and asbestos-containing products,
25 | created an unreasonable risk of bodily harm to exposed persons.

26 |     34.   Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
27 | and various asbestos-containing products manufactured, fabricated, inadequately researched,
28 | designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

1  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
2  marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
3  aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
4  cannot identify precisely which asbestos or asbestos-containing products caused the injuries
5  complained of herein.

6      35.  Plaintiff relied upon defendants', their "alternate entities'", and each of their
7  representations, lack of warnings, and implied warranties of fitness of asbestos and their
8  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff have
9  been injured permanently as alleged herein.

10      36.  As a direct and proximate result of the actions and conduct outlined herein, Plaintiff
11  have suffered the injuries and damages previously alleged.

12      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
13  ENTITIES, and each of them, as hereinafter set forth.

14  **IV.**

15  **PRAYER**

16      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
17  ENTITIES, and each of them in an amount to be proved at trial, as follows:

18      (a) For Plaintiff's general damages according to proof;

19      (b) For Plaintiff's loss of income, wages and earning potential according to proof;

20      (c) For Plaintiff's medical and related expenses according to proof;

21      (d) For Plaintiff's cost of suit herein;

22      (e) For exemplary or punitive damages according to proof;

23      (f) For damages for fraud according to proof; and

24  ////

25  ////

26  ////

27  ////

28

K:\Injured\102745\FedtCmp FED (Pl solo).wpd

10
COMPLAINT

1    (g) For such other and further relief as the Court may deem just and proper, including

2        costs and prejudgment interest.

3

4    Dated: __12/12/07__                    BRAYTON❖PURCELL LLP

5

6                                    By: _____

7                                        David R.  Donadio
                                        Attorneys for Plaintiffs

8

                                    JURY DEMAND

9        Plaintiffs hereby demand trial by jury of all issues of this cause.

10

11    Dated: __12/12/07__                    BRAYTON❖PURCELL LLP

12

13                                    By: _____

14                                        David R.  Donadio
                                        Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

## EXHIBIT A

Plaintiff:   **JAMES FARRIS**

Plaintiff's injuries:   Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about July 2000.

Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Guy F. Atkinson Co. 1009 Oak Hill Rd., Ste. 201 Lafayette, CA | Willamette Shipyard Richmond, CA | Marine Machinist | 1974-6/1976 |
| | Various ships including the following: | | |
| | ALAMEDA COUNTY (AVB-1; LST-32) | | |
| | BLAND (APA-134) | | |
| | BOISE VICTORY (1945) | | |
| | BRYANT (DD-665; DD-66) | | |
| | CALIFORNIA (CGN-36) | | |
| | CALIFORNIA STANDARD (1945) | | |
| | CATAWBA FORD (1944) | | |
| | COLUMBIA (CL-56) | | |

DRAKE VICTORY (1945)

EXXON NEWARK (1952)

FLINT (AE-32; T-AE-32)

GAINES MILL (1943)

GALLANT
(AM-489; MSO-489)

GALVESTON (1945)

GENERAL H.H. ARNOLD
(T-AGM-9)

GENERAL J.C.
BRECKINRIDGE
(AP-176)

GOLDEN BEAR (1940)

**GREEN LAKE (1976)
[aka ERNIE PYLE
(1976)]**

HALEAKALA (AE-25)

HAWAIIAN CITIZEN
(1944)

HAWAIIAN MONARCH
(1944)

HAWAII STANDARD
(1945)

HECTOR (AR-7)

HILLYER BROWN (1953)

IDAHO STANDARD
(1944)

J.H. TUTTLE (1943)

JOHN H. TUTTLE

KANSAS CITY (AOR-3)

KILAUEA (AE-26)

LOYOLA VICTORY
(1945)

LURLINE (1973)

MARINE ADDER (1945)

MARIPOSA (1953)

MATSONIA (1973)

MAUNA KEA (AE-22)

MONTEREY (1952)

MOUNT HOOD (AE-29)

MOUNT ROGERS (1946)

OREGON STANDARD
(1944)
[aka FORT CLATSOP
(1944)]

PORTLAND (1945)
[aka **GENERAL D.E.
AULTMAN (1945)**]

PRESIDENT ADAMS
(1968)

PRESIDENT ARTHUR
(1952)

PRESIDENT
CLEVELAND (1969)

PRESIDENT JACKSON
(1953)

PRESIDENT LINCOLN
(1961)

PRESIDENT
ROOSEVELT (1962)

PRESIDENT TAYLOR
(1954)

PRESIDENT TYLER
(1961)

PUEBLO
(AKL-44; AGER-2)

SANTA MARIA (1963)

SCHUYLER OTIS
BLAND (AK-277)

SHASTA (AE-33; T-AE-
33)

SILAS BENT (T-AGS-26)

TRINITY (1943)
[aka **WASHITA (1943)**]

WABASH (AOR-5)

WATCHMAN (AGR-16)

WHEELING (1945)

WYMAN (DE-38)

| | |
|---|---|
| Naval Air Station Alameda, CA CORAL SEA (CVB-43; CVA-43) | spring of 1976: (2 times: 2.5-3.5 days total) |
| Naval Air Station Alameda, CA HORNET (CV-12) | spring of 1976 (2 times: 2 days total) |
| Triple A Machine Shop San Francisco, CA SEALAND TRADE (1973) | end of 9/1975-12/3/1975 (about 2 months) |

Job Duties: Plaintiff worked on board on approximately 100 different ships, including naval, coast guard cutters, ammunition ships, tugboats, fuel barges, and various military ships. Plaintiff recalls repairing ships that were owned by MATSON LINES (major overhauls and extensive repairs), ATLANTIC RICHFIELD (ARCO), EXXON (two ships), ARISTOTLE ONASSIS (approximately eight to ten ships), SEA-LAND, PRESIDENT LINES, STANDARD OIL/CHEVRON (tug boats and fuel barges), UNITED STATES LINES (major overhauls and extensive repairs). Plaintiff generally performed overhaul and minor repair work. Plaintiff worked on 25-ton wheels (propellers) of ships. Plaintiff unbolted and removed the first shaft section of the wheels. Plaintiff cleaned and repaired all the shafts, nuts, and bolts. Plaintiff worked in all the engine rooms. Plaintiff removed existing gaskets with a wire brush, scraper, and a grinder with a wire wheel. Plaintiff cleaned the surfaces of the flanges. Plaintiff cut and installed GARLOCK gaskets. Plaintiff also removed, tore apart, and installed FLEXITALLIC gaskets. Plaintiff ripped off asbestos insulation in order to get to the valves. Plaintiff replaced valves that were at the first flange of the boiler and closer. Plaintiff removed, re-packed, and installed CHICAGO PUMP (FMC CORPORATION) monkey-motion pumps and other smaller pumps. Plaintiff removed and re-packed JOHN CRANE packing and ANCHOR PACKING packing, and installed CHAPMAN VALVE, CRANE CO., DIXON VALVE, and PACIFIC (CRANE CO.) valves. Plaintiff also replaced and re-packed THOMAS A. SHORT valves around the boilers and recalls THOMAS A. SHORT being the supplier for these valves. Plaintiff recalls banging and taking apart CHICAGO PUMP and PATTERSON PUMP pumps when they were stuck. Plaintiff overhauled PACKARD engines and removed head gaskets and bullgears with gaskets. Plaintiff replaced the gaskets with CRANE CO. and ANCHOR PACKING gaskets. Plaintiff wore 3M paper masks. Plaintiff worked closely with boilermakers repairing the following boilers manufactured by BABCOCK & WILCOX, FOSTER WHEELER, and RILEY STOKER. Plaintiff recalls boilermakers replacing refractory bricks and materials. Plaintiff was also around others who replaced WESTINGHOUSE ELECTRIC and GENERAL ELECTRIC gauges and switches. Plaintiff worked near insulators using pre-formed pipecovering and lagging as a filler for the seams and asbestos wraps. Plaintiff was nearby when JOHNS-MANVILLE and OWENS CORNING FIBERGLAS insulation cement was mixed in the craneway and the deck or sometimes right at the projects. Plaintiff was also around pipefitters

K:\Injured\102745\Fed\FEDA (PI solo).frm

5

EXHIBIT "A"

removing insulation and pipes; others performing turbine work; and electricians replacing and/or repairing turbines' electrical components, control panels, switches, and electrical wires. Plaintiff observed boxes of GRAYBAR ELECTRIC and CUTLER-HAMMER electrical components on the floor near the electricians. Plaintiff recalls working next to LEVINS METALS, Richmond, California, whose employees were cutting up ships. Plaintiff recalls LEVINS METALS employees were across the craneway. Plaintiff recalls the following co-workers: Nick Newman, address currently unknown; Luther Champion, Richmond, California; Bill Gale, address currently unknown; Bill Grant, deceased; Tom West, Richmond, California; and Stevie Lopez, deceased.

At the Naval Air Station, Alameda, California, plaintiff replaced a pump or hydraulic pump under the flight deck of the CORAL SEA.

Plaintiff was sent over to Triple A Machine Shop to work on the outside of the SEALAND TRADE. Plaintiff removed the 25-ton wheels and the first section and intermediate shafts. Plaintiff cleaned and repaired all the shafts, nuts, and bolts. Plaintiff disturbed the bearing and replaced the tallow. Plaintiff polished the shafts. Plaintiff worked around the following trades: boilermakers and welders welding with 6010 welding rods and performing heliarc welding to repair the cracks on the shafts.

Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Todd Shipyard | Todd Shipyard Alameda, CA 3 unknown ships | Marine Machinist | 1976 (2 times: 8-10 days total) |

Job Duties: Plaintiff worked on two oil tankers that were owned by EXXON ships. Plaintiff replaced and re-packed valves. Plaintiff used JOHN CRANE packing and ANCHOR PACKING packing. Plaintiff recalls re-packing valves manufactured by: CHAPMAN VALVE, CRANE CO., DIXON VALVE, and PACIFIC (CRANE CO.). Plaintiff recalls co-worker Tom Sorry, address currently unknown, and Nick Saint, address currently unknown. Plaintiff currently contends that he was exposed to asbestos during this employment.

////

////

////

////

////

K:\Injured\102745\Fed\FEDA (PI solo).frm

6

EXHIBIT "A"

## PARA-OCCUPATIONAL EXPOSURE:

From August 23, 1949, to September 16, 1964, plaintiff lived with his father, Robert Lee Farris, deceased. Plaintiff's father would come home in his dirty and dusty work clothes. Plaintiff recalls his father's clothing had asbestos insulation dust on them. Plaintiff's father would go to the garage to shake his clothes out. Plaintiff assisted in doing the laundry. Plaintiff's father's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Unocal | Union Oil Rodeo/Oleum, CA | Maintenance Mechanic | 5/1954-1958 |
| | | Operator | |

Job Duties: Plaintiff's father performed general maintenance and repairs during shutdowns. Plaintiff's father later became an operator and continued to perform all types of repair work. Plaintiff's father wrote permits to open up vessels during shutdowns. Plaintiff's father checked pressure gauges on various pumps and pipelines. Plaintiff's father was present throughout the shutdowns. Plaintiff currently contends that he was exposed to asbestos during his father's employment.

EXHIBIT "A"